UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALBERT COUNCE,

    Plaintiff,

    v.       CAUSE NO. 3:20-CV-72-RLM

WEXFORD MEDICAL SERVICES INC,

    Defendant.

## ORDER

Albert Counce, a prisoner without a lawyer, is proceeding in this case on a "claim for money damages against Wexford Medical Services for maintaining a policy or practice of providing inadequate treatment to inmates with hepatitis C that has resulted in a violation of his rights under the Eighth Amendment[.]" ECF 5 at 4. Wexford filed a motion for summary judgment. Mr. Counce filed a response in opposition, and Wexford filed a reply. Mr. Counce also filed a cross-motion for summary judgment, to which Wexford has responded. Both motions are ready for decision.

## I. FACTS

Mr. Counce has Hepatitis C. Hepatitis C is a slowly progressing virus that primarily affects the liver. About five to ten percent of infected people might develop cirrhosis of the liver (severe and permanent scarring) over a twenty-to-thirty year period. Most patients with chronic Hepatitis C are asymptomatic, so doctors monitor

a patient's condition through lab tests, looking for indications of potential liver injury called fibrosis. The lab results allow physicians to gauge a patient's degree of liver damage by calculating an APRI score. An APRI score less than or equal to 0.5 "is a strong indicator that there is very little to no fibrosis present," but a score of 1.5 or higher is "a strong indicator of cirrhosis." Alex Snyder, *APRI Score*, https://www.healthline.com/health/hepatitis-c/apri-score (last visited August 9, 2021).

Antiviral therapy is the predominant treatment for a Hepatitis C infection. In the Indiana Department of Correction, access to antiviral therapy is regulated by Health Care Services Directive 3.09, which places patients into a treatment queue based on priority of need. Under Directive 3.09, an APRI score over 2.0 places a patient in the high-risk category and the patient receives high priority for the treatment. Patients with less immediate treatment needs continue to be monitored and assessed for treatment. Directive 3.09 was found to violate the Eighth Amendment in Stafford v. Carter, No. 1:17-cv-289-JMS-MJD, 2018 WL 4361639, at *11, (S.D. Ind. Sept. 13, 2018), a class action against Robert E. Carter, Jr., comprised of "all current and future prisoners in IDOC custody who have been diagnosed, or will be diagnosed, with chronic HCV, and for whom treatment with DAA medication is not medically contraindicated." The Southern District of Indiana approved a settlement in which all members of the class will receive DAA treatment by July 1, 2023, prioritizing those with higher-stage progression of the virus, and entered final judgment on January 2, 2020. Stafford v. Carter, No. 1:17-cv-289-JMS-MJD at ECF

2

282, 283 (Jan. 2, 2020). Wexford was contractually bound to follow Directive 3.09 when treating inmates in the Department of Correction.

Mr. Counce was transferred to Westville Correctional Center on September 17, 2019. He was seen at a Chronic Care Visit on September 26, 2019. His APRI score was 0.577 and he had no symptoms of Hepatitis C. This placed him in the "low risk" category.

At Mr. Counce's next Chronic Care Visit on March 30, 2020, his APRI score was 0.397. He began receiving antiviral treatment in July 2020 and completed it in October 2020. The lab evaluation upon completion showed the treatment was successful, and he would be further evaluated after twelve weeks and again six to twelve months later.

## II. ANALYSIS

### STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a

properly supported summary judgment motion can't just rely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . . ." Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

When a plaintiff moves for summary judgment, he must affirmatively demonstrate he can prove every single element of a claim with undisputed evidence. This is a higher burden than at trial, when a plaintiff need only convince the judge or jury that his version of events is more likely true than not true. *See* Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund, 778 F.3d 593, 601 (7th Cir. 2015) ("Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim."). Defendants have a slightly different burden at summary judgment: they need only establish that the plaintiff cannot prove at least one element of the claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323-334 (1986).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Mr. Counce does not include any evidence in support of his motion or dispute any of the evidence Wexford produced with its summary judgment motion. Instead, he argues that the mere fact that he received the antiviral treatment after he filed this lawsuit implies that he was wrongfully denied it earlier. He contends the timing of his treatment implies his lawsuit forced Wexford to provide the treatment and this is enough to show Wexford has a practice of denying Hepatitis C treatment until an offender files a grievance or lawsuit.

That Mr. Counce received Hepatitis C treatment after he filed this lawsuit doesn't support an inference that he should have received it sooner. He doesn't point to any medical reason why the earlier denial of treatment was inappropriate. Nor does his case alone establish that Wexford had a policy or practice of delaying or denying treatment until a lawsuit is filed. "[M]ore evidence than a single incident" is generally required to show a pervasive practice. Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005). Mr. Counce hasn't met his burden to establish every element of the claim beyond doubt.

## WEXFORD'S MOTION FOR SUMMARY JUDGMENT

Wexford also moves for summary judgment. Wexford argues there is no evidence that the delay in receiving the antiviral treatment harmed Mr. Counce. Wexford also contends that the record doesn't establish that it has any unconstitutional policy regarding Hepatitis C treatment.

Under the Eighth Amendment, inmates are entitled to adequate medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Corporations that contract with government entities to provide essential government services to inmates can be held liable under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), for deliberate indifference. <u>Shields v. Ill. Dep't of Corr.</u>, 746 F.3d 782, 789 (7th Cir. 2014). But to establish *Monell* liability, it's not enough to point to one employee's unconstitutional act. Rather, the plaintiff must identify an unconstitutional policy or practice attributable to the organization as a whole. *Id*. There are several ways in which a plaintiff may prove this:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made by those whose edicts or acts may fairly be said to represent official policy. As we put the point in one case, a person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government. Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

<u>Glisson v. Ind. Dep't of Corr.</u>, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (quotation marks, citations, and internal alterations omitted). If Mr. Counce can't point to an official Wexford policy that was itself unconstitutional, he might prove liability through "a series of bad acts" that create the inference that "the policymaking level of government was bound to have noticed what was going on and by failing to do

6

anything must have encouraged or at least condoned . . . the misconduct of subordinate officers." Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004).

It's undisputed that Wexford wasn't involved in drafting Directive 3.09 and that Wexford was contractually required to follow it. Thus, the policy was not "officially adopted and promulgated by [Wexford's] officers," Glisson v. Ind. Dep't of Corr., 849 F.3d at 379, as required for one basis of *Monell* liability. Moreover, Mr. Counce hasn't pointed to evidence that anyone from Wexford was involved in selecting which inmates received the antiviral treatment. Rather, Wexford's role was limited to monitoring patient health and referring the cases to the Department of Correction decisionmakers. *See* Stafford v. Carter, 2018 WL 4361639, at *15 (holding IDOC, and not Wexford, responsible for HCSD 3.09 because "[IDOC] Defendants seek to control physicians' treatment decisions by providing parameters within which they should consider an individual eligible for HCV treatment at all" and "IDOC's policy is intended to govern the treatment of HCV-infected inmates—otherwise physicians would be left to simply apply their own medical judgment as to the proper course of treatment for each inmate"); Hatfield v. Hobson, No. 2:18-cv-464-JMS-MJD, slip op. at 15, (S.D. Ind. Sept. 22, 2020) (granting summary judgment for prison healthcare providers on inmate's Hepatitis C policy and practice claim because the providers "were bound by the constraints of IDOC policy" and inmate's care fell within the policy's guidelines); *see also* Davis v. Wetzel, No. 1:18-cv-804, 2020 WL 3642382, at *7-8 (M.D. Pa. July 6, 2020) (granting summary judgment on *Monell* claim for prison

7

medical defendants because it was undisputed that the DOC established the Hepatitis C policy, the Hepatitis C Treatment Committee decided which inmates received DAA treatment, and neither defendant was involved in establishing the policy or participating on the committee).

Wexford might be liable based on a custom of blindly following Directive 3.09 without consideration of an inmate's individual circumstances. *See* Roe v. Elyea, 631 F.3d 843, 860 (7th Cir. 2011) ("Here, the FBOP Guidelines [for treating Hepatitis C] employed by Dr. Elyea as a guide in formulating and implementing [Illinois Department of Corrections'] policy were no doubt a useful tool and, as a general matter, might assist in assessing treatment options with respect to a disease that is slow-progressing and highly dangerous or fatal, over time, in only a small percentage of infected persons. . . . With respect to an individual case, however, prison officials still must make a determination that application of the protocols result in adequate medical care."). However, Mr. Counce has pointed to nothing in his medical records that would suggest he needed more immediate access to antiviral treatment. It is undisputed that Mr. Counce's APRI scores were low and not consistent with a patient suffering acute liver disease or cirrhosis. He points to no other circumstances that would suggest he needed faster access to the treatment, let alone a widespread custom of Wexford employees ignoring the individual circumstances of other inmates.

For these reasons, the court:

(1) DENIES the plaintiff's summary judgment motion (ECF 34);

(2) GRANTS the defendant's summary judgment motion (ECF 35); and

8

(3) DIRECTS the clerk to enter judgment in favor of Wexford Medical Services Inc. and against Albert Counce.

SO ORDERED on August 11, 2021

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT